Carl D. Crowell, OSB No. 982049
email:  crowell@kite.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **VOLTAGE PICTURES, LLC,** | Case Nos.:  6:13-cv-290-AA |
| | 2:13-cv-292-AA |
| Plaintiff, | 1:13-cv-293-AA |
| | 3:13-cv-295-AA |
| v. | |
| | Honorable Judge Ann L. Aiken |
| **DOES 1 – 198,** | |
| **DOES 1-12,** | PLAINTIFF'S REPORT TO THE COURT |
| **DOES 1-34,** | & REQUEST FOR EXTENSION OF TIME |
| **DOES 1-371,** | |
| | |
| Defendants. | |

Plaintiff Voltage Pictures, LLC, requests from the court additional time for the purpose of ascertaining the true identity of the Does identified in Exhibits 1 of the several Complaints in the above-captioned cases.  Plaintiff acknowledges there is an outstanding Show Cause Order on this matter and will address the Show Cause Order separately.  The filing of this Request for Extension of Time is to avoid further delay and is supported by the filed Declaration of Counsel and the attached Exhibits 1 – 11.

## I.  INTRODUCTION

This matter is related to online copyright infringement which is a serious plague on the nation.  While there are arguments the law has not caught up to the technology, the fact is that in

direct response to peer-to-peer copyright infringement such as complained of in this case, Congress increased civil penalties from $100,000 to $150,000 per work in an attempt to stem the growing flood of infringers. *Digital Theft Deterrence and Copyright Damages Improvement Act of 1999.*

Despite the fact that peer-to-peer copyright infringement is a serious problem, many consider the illegal downloading of movies to border on being an entitlement and illegal peer-to-peer "file sharing" as a non-issue. Senator Levin aptly noted:

> … violations of copyright law over the Internet are so widespread and easy to accomplish that may participants seem to consider it equivalent to jaywalking – illegal but no big deal. But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used – called "file sharing" as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm.[1]

File-sharing is not sharing; it's stealing and a real and present issue. Only this week, the Oregon House of Representatives *unanimously* passed House Memorial 2, which recognizes "…the importance of protecting intellectual property…" and "…the challenge of combating intellectual piracy and the counterfeiting of intellectual property such as … films…." In House Memorial 2, Oregon has asked the federal government for more support in efforts to protect intellectual property rights.[2] Decl. Counsel ¶ 10, Exhibit 1.

Yet amidst this setting arises discontent. Granted, there have been bad actors. But a few examples are being used to attempt to set aside copyright laws and permit near countless acts of theft. Media outlets have characterized many recent copyright actions as the work of trolls, yet

---

[1] Statement of Sen. Levin; Privacy and Piracy: The Paradox of Illegal File Sharing on Peer-to-Peer Networks and the Impact of Technology on the Entertainment Industry: Hearing Before the Permanent Subcomm. on Investigations of the Sen. Comm. On Governmental Affairs, 108th Cong., 1st Sess. 10 (2003).

[2] House Memorial 2, 77th Oregon Legislative Assembly – 2013 Regular Session. See http://www.leg.state.or.us/13reg/measures/hm1.dir/hm0002.intro.html

fail to recognize the prevalence of the theft and that "intellectual property infringement can undermine the nation's economic security." *Id.*

The Copyright Act is federal law which protects copyright holders. For over two-hundred years the federal courts have been guided by the principle that every individual has a right to claim the protection of the laws whenever that individual receives and injury. *Marbury v. Madison*, 5 U.S. 137, 163 (U.S. 1803). In these cases, Voltage Pictures, LLC claims injury approximately 600 times in the state of Oregon. Seemingly lost in the discussion is Voltage's right to claim the protection of the Copyright Act and Voltage's right to seek the legitimate enforcement of its copyright.

## II. BACKGROUND

### A. Filing the cases

Prior to filing the above-captioned cases, plaintiff's counsel contacted various court staff to confer and determine how these cases might best be managed. Decl. Counsel, ¶ 3. Knowing that case management would be a complex issue and fraught with potential problems, input was requested from both staff and judges. *Id.* Counsel was eventually directed to Court Administrator Steve Minetto to discuss options. *Id.* Mr. Minetto's initial request was for a single action naming all defendants for judicial economy. Decl. Counsel, ¶ 4. Counsel suggested a number of smaller groups. *Id.* Mr. Minetto eventually agreed that the cases could at least initially be divided by division. *Id.* Accordingly, plaintiff filed the four above-captioned cases by division. In the related Show Cause Order, there is the implication that plaintiff filed four cases in this matter to save money. It should be noted plaintiff filed fewer cases than intended as an accommodation of the Court Administrator, not for financial reasons. The full legal basis for

joinder, the mechanics and economics of managing the instant cases with joined defendants will be discussed further in plaintiff's subsequent filed response to the Show Cause Order.

**B.  Initial Discovery**

Plaintiff filed motions to expedite discovery on February 21, 2013.  On February 22, 2013, the court allowed discovery and directed "Plaintiff shall either amend its complaint to identify the Doe defendants or request an extension of time, if necessary, to discover the Doe defendants' identity."  Doc. No. 7, in 3:13-cv-00295-AA.  Plaintiff then filed its First Amended Complaint on February 27.  Doc. No. 9, in 3:13-cv-00295-AA.  Plaintiff acknowledges that it has failed to comply with this directive as 48 days have passed since the February 22 Order, but notes only 44 days have passed since plaintiff filed its First Amended Complaint.  As well, subsequently there have been further orders on discovery in similar cases which plaintiff believes are relevant.  Plaintiff's intent was not to disregard the order of the court.  Plaintiff's counsel has throughout this matter endeavored to work with the court to facilitate the management of the above-captioned cases.  Decl. Counsel, ¶¶ 3 - 8.

On receiving leave to take discovery, plaintiff's counsel began to work with various internet service providers ("ISPs") to obtain subscriber information related to specific internet protocol ("IP") addresses.  Plaintiff allowed several ISPs extensions of time due to work-load burdens of the ISPs and to allow notice to subscribers.  In the above-captioned cases, plaintiff has served 45 civil subpoenas on 27 ISPs.  Presently, the ISPs have responded with either a definite subscriber identity or an inability to provide definite subscriber identity for 182 IP addresses.  Decl. Counsel, ¶ 9.

While an ISP such as Comcast is adept at managing subpoenas, many smaller ISPs did not fully appreciate the requirements of federal regulations.  The court's order was broad and

favorable to plaintiff, but it failed to account for certain rights of subscribers and obligations of ISPs.  As a result, plaintiff's counsel, began to include a notice of rights under the Cable TV Privacy Act of 1984 (47 U.S.C. § 551) ("Cable Act") and under the Stored Communications Act (18 U.S.C. § 2701) ("Stored Communications Act") with the issued subpoenas.  This effort was to avoid ISPs inadvertently making improper disclosures.  Decl. Counsel, ¶ 5,  Exhibit 2.

Additionally, plaintiff's counsel is counsel to another copyright holder, Elf-Man, LLC ("Elf-Man").  In the subsequently filed *Elf-Man, LLC v. Does 1-107* (3:13-cv-00334), a similarly broad and general order for expedited discovery was issued by Judge Acosta.  Doc. No. 8, 3:13-cv-00334-AC.   When counsel realized the notice being provided was not likely sufficient, counsel initiated contact with the Judicial Clerks of both Judge Aiken and Judge Acosta and requested an opportunity to confer with the court on how manage this discovery issue.  Decl. Counsel, ¶ 7.  The discovery allowed plaintiffs was liberal, but counsel's position was a more specific order was warranted.  After conferral with the clerks of Judge Acosta and Judge Aiken, it was suggested plaintiff propose a new form of order to govern discovery going forward.   Decl. Counsel, ¶ 7.  Counsel then proceeded to file an *ex parte* motion for an amended and narrower discovery order.  Doc. 9, 3:13-cv-00334-AC; Decl. Counsel, ¶ 7, Exhibit 3.  Judge Acosta further modified that initial proposed order, expanding the time for ISP notice and extending the time to respond to 60 days.  Decl. Counsel, ¶ 7, Exhibit 4.  While an amended order in this case was not sought as all subpoenas had been issued, plaintiff took direction from these subsequent orders and made sure all outstanding responses were from ISPs who were fully aware of their duties and obligations as outlined in these new orders.  Decl. Counsel, ¶ 8.  An amended order in this case would have done little more than clutter the docket.  Indeed, after filing the First Amended Complaint, plaintiff's counsel contacted the Judicial Clerk to ask if an a second Motion to

Expedite Discovery should be filed and plaintiff's counsel was instructed a subsequent motion and order was not needed.  Decl. Counsel, ¶ 8.

In short, plaintiff's counsel has far from ignored the order of the court, but has gone beyond the order to manage this litigation so as to protect the integrity of this process, to protect the rights of ISP subscribers and to work diligently with ISPs to accommodate their respective workloads.  Plaintiff's counsel has even instructed some ISPs on subscriber rights.  Plaintiff acknowledges that in the dockets of the above-captioned cases there is a technical failure to comply and the appearance of disregard.  However, it is requested this be viewed in the light of a regular dialog with this court and the courts in which similar cases have been filed by plaintiff's counsel and demonstrated good faith efforts.

In light of the history of this case and others, it is requested the court accept plaintiff's counsel's position that there was no intentional disregard of this court's order and plaintiff now submits a request for additional time.

## III. REQUEST FOR ADDITIONAL TIME

### A.  Good Faith Pursuit of Discovery

In the more specific and tailored discovery orders issued such as the order of Judge Acosta (60+ days), which plaintiff has adopted as guidance in this case, there is outlined the express duty for ISPs to notify subscribers and provide them an opportunity to be heard.  Exhibit 4.  As noted above, not all ISPs have responded to plaintiff's subpoenas.  By giving ISPs the opportunity to properly notify subscribers, plaintiff is still waiting for initial subpoena responses from ISPs for approximately 70% of the subscribers.  Decl. Counsel, ¶ 9.

To the extent plaintiff has received responses, these have run the gamut from educational institutions, to municipalities, to businesses and to individuals.  These responses are being

investigated.  The extent any subscriber has claimed to not be liable or responsible, plaintiff has offered to conduct further discovery subject to a protective order to ensure privacy, to either ascertain the identity of the true Doe defendant or to clear the party in question so as not to inadvertently name a party as a defendant.  As an example, prior to a media story about one such subscriber, plaintiff specifically offered to "work with [the subscriber] to have a party investigate … to determine [who] is responsible for the illegal activity.  As well, if we are able to determine that there is an error in our data or of [sic] there is another explanation, then we will agree to voluntarily dismiss you from the pending case."  Decl. Counsel, ¶ 11, Exhibit 5.  In another instance, plaintiff is currently awaiting the receipt of paperwork which cleared a subscriber's machines as a result of a computer forensic analysis.  Decl. Counsel, ¶ 19.

On other matters, plaintiff counsel has made clear to the identified subscribers, "Our client has an interest in identifying the actual infringers.  If she is not liable then we would like to clear her and work to ascertain the identity of the actual infringer." Decl. Counsel, ¶ 12, Exhibit 6.  "If your client is not the infringing party we would like to conduct further discovery to ascertain the identity of the infringing party..."  Decl. Counsel, ¶ 13, Exhibit 7.  "Based on the facts you present we do not believe your client should be liable in this matter. Your client maintained a password on their Wi-Fi and reasonably directed their neighbor/tenant to limit and control access..." Decl. Counsel, ¶ 14, Exhibit 8.  Far from concerns of coercion, plaintiff is cooperatively working to avoid inadvertently naming parties.

In an instance where a municipality was identified with an IP address tied to massive infringing activity, counsel noted "...it is clear this is a substantial issue not only for our clients, but also for The City.  Activity is recorded as recently as this morning...."  Further we agreed to work "cooperatively" to help this municipality track down and address this problem. Decl.

Counsel, ¶ 15, Exhibit 9.  In an instance where a hotel was identified as a source of notable activity, plaintiff worked with the hotel which is now aware of the problem and plaintiff expressly waived any demands for compensation.  Decl. Counsel, ¶ 18.  Plaintiff took a similar approach with respect to another business, and when proper, works cooperatively with parties to address the root causes of the problem.  Decl. Counsel, ¶ 16, Exhibit 10.

However, for the majority of identified subscribers with whom plaintiff has had contact, there has been either a confirmation of infringement or an agreement to dismiss.  Decl. Counsel, ¶ 20.  And where proper, the non-economic relief of consent judgments has been used to enjoin parties from further infringement.[3]

### B.  Implications of Bad Faith

Plaintiff is well aware of the implications before the court that related litigation in other jurisdictions has been pursued with questionable motive.  Plaintiff fully supports and agrees with the court's concerns and the need to move cautiously, but notes that plaintiff, on its own initiative, has been far more cautious and careful than required by this court to ensure that the enforcement of plaintiff's rights are in good faith.  As demonstrated above, plaintiff's conduct is not simply seeking quick settlements, but is holistically and legitimately defending plaintiff's rights, working with subscribers and will when necessary litigate these cases in court.  A more comprehensive review of these issues and the issue of joinder will be addressed in plaintiff's subsequent response to the court's Show Cause Order.

---

[3] Plaintiff has elected to delay the filing of consent judgments out of a courtesy to those parties due to media scrutiny of this case, with thanks from opposing counsel.  Decl. Counsel, ¶ 17, Exhibit 11.  Plaintiff will make these consent judgments available for judicial review, but does not wish to unnecessarily subject cooperative parties to media scrutiny.

### C. Additional Time Needed

In light of the increased time required by the ISPs to respond to plaintiff's subpoenas, including the time needed for such ISPs to comply with notice requirements of the Cable Act, the guidance of subsequent discovery orders initiated by plaintiff and plaintiff's accommodation of the ISPs work-load burden, plaintiff requests additional time to conduct discovery.

As discussed briefly above, plaintiff's counsel has been interacting with identified subscribers to identify actual infringers. Plaintiff requests at least sixty (60) days from receipt of initial subpoena responses to conduct such additional discovery as may be needed to properly name Doe defendants beyond simply naming subscribers identified by ISPs. Plaintiff anticipates receiving responses identifying the majority of subscribers within the next ten (10) days.[4]

### D. Further Involvement of the Court

Both the Federal and State Governments have expressly recognized that piracy is a rampant and serious problem, but the solution is not to impair the efforts of rights holders to legitimately enforce their rights. The burden on the courts to manage thousands of individually addressed internet-based copyright claims would be incredible. Similarly, unfettered subpoena power and a court without a watchful eye can lead to abuses by unscrupulous plaintiffs. This is a complex issue and one not easily resolved. Copyright litigation may eventually require specific procedures, possibly supplemental local rules such as those that guide patent litigation. But it is clear an answer needs to be found. Contrary to the blind and unsupported import of select anecdotes and media sensation, plaintiff's counsel practices and proposes real and rational review and management of the matter based on actual practice and results.

Plaintiff submits that in sixty (60) days it would be proper for a conference with the court and possibly an invitation to interested third parties who have expressed concern related to this

---

[4] Motions to Quash aside.

litigation.  At that time the court could review this and related litigation to further develop a model of best practices to promote the effective and efficient administration of justice and to support the much needed enforcement of intellectual property rights.

Pending such opportunity, plaintiff respectfully requests this court extend the time needed to conduct proper discovery.  Plaintiff has a high degree of faith in this court's ability to maintain a judicial eye on matters as they develop.

## IV. CONCLUSION

For the reasons presented above, plaintiff requests this court for extension of time to continue discovery and ascertain the true identity of the Does identified in Exhibits 1 of the several Complaints and for such other direction as the court deems proper.

DATED: April 12, 2013.

Respectfully submitted,

CROWELL LAW

/s/ Carl D. Crowell
Carl D. Crowell, OSB No. 982049
email:  crowell@kite.com
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for the plaintiff