Carl D. Crowell, OSB No. 982049
email: crowell@kite.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **VOLTAGE PICTURES, LLC,** | Case Nos.:   6:13-cv-290-AA, |
| | 2:13-cv-292-AA, |
| Plaintiff, | 1:13-cv-293-AA, |
| | 3:13-cv-295-AA |
| v. | |
| | Honorable Judge Ann L. Aiken |
| **DOES 1 – 198,** | |
| **DOES 1-12,** | PLAINTIFF'S RESPONSE TO |
| **DOES 1-34,** | ORDER TO SHOW CAUSE |
| **DOES 1-371,** | |
| Defendants. | |

## PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 5

II.   BACKGROUND ............................................................................................................. 5

III.  DISCUSSION ................................................................................................................. 7

    A.   The cases should not be dismissed for failure to follow a court order. ..................... 7

        1.   Costs of the case. ................................................................................................ 8

        2.   Good faith litigation. ......................................................................................... 9

        3.   Voltage's counsel has been proactive in case management. ............................. 11

        4.   Voltage's failure to comply is based on inability and its cases should not be dismissed. ... 12

    B.   The defendants should not be severed. ..................................................................... 12

        1.   There is a single BitTorrent Protocol used by defendants. .............................. 13

        2.   The infringing activity occurred within a common time and place. .................. 14

        3.   There are common issues of law and fact. ....................................................... 15

        4.   Interests of justice and principals of fundamental fairness. ............................. 16

IV.   CONCLUSION .............................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andersen v. Atlantic Recording Corp.*, No. 7-934 (D. Or., 2010) ................................................ 20

*Boy Racer, Inc. v. Does 1–60*, No. 11-1738 (N.D. Cal., 2011) ...................................................... 13

*Bubble Gum Productions, LLC v. Does 1-80*, 2012 WL 2953309 (S.D.Fla., 2012) ................... 19

*Call of the Wild Movie, LLC v. Does 1-1,062,* 770 F. Supp. 2d 332 (D.D.C., 2011) .................. 17

*Digital Sin, Inc. v. Does 1–176*, 2012 WL 263491 (S.D.N.Y., 2012) ........................................... 13

*Elf-Man, LLC v. Does 1-107*, No. 13-334 (D. Or., 2013)............................................................. 11

*Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir.1983) ............................... 7

*First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241 (N.D. Ill., 2011).................................... 16

*Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009)............................................................................. 12

*In Re BitTorrent Adult Film Copyright Infringement Cases,* No. 12-3995 (E.D.N.Y., 2012) ..... 13

*Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 (S.D.N.Y., 2012)............................... 15

*Marbury v. Madison*, 1 Cranch 137 (1803) .................................................................................. 16

*Marek v. Chesny,* 473 U.S. 1 (1985)............................................................................................. 20

*Maverick Entertainment Group, Inc. v. Does 1-4,350*, No. 10-569 (D.D.C., 2010) ................... 13

*Mosley v. Gen. Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974)...................................................... 14

*National Hockey League v. Metropolitan Hockey*, 427 U.S. 639 (1976) ................................. 7, 12

*Nu Image, Inc. v. Does 1–23,322*, 799 F. Supp. 2d 34 (D.D.C., 2011) ........................................ 19

*Pacific Century International v. Does 1-31*, No. 11-9064 (N.D. Ill., 2011)................................. 15

*Patrick Collins, Inc. v. Does 1-30*, 2013 WL 1157840 (E.D. Pa., 2013)...................................... 19

*Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161 (E.D. Mich., 2012)....................... 13, 15

*Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 (E.D. Mich., 2012) ........................ 13

*Raw Films v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa., 2012) ..................................... 13, 17

*Sosa v. DirectTV*, 437 F. 3d 923 (9th Cir. 2006) ........................................................ 20

*Tricoast Smitty, LLC v. Does 1-50*, No. 12-6385 (N.D. Ill., 2012) ................................ 15

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ................................. 12, 21

*United States v. Mississippi*, 380 U.S. 128(1965) ....................................................... 13

*Voltage Pictures, LLC v. Does 1-2,514*, No. 12-217 (M.D. Fl., 2012) ......................... 13

**Statutes**

17 U.S.C. § 504(c) ....................................................................................................... 5, 17

17 U.S.C. § 505 .............................................................................................................. 17

18 U.S.C. § 2701 ............................................................................................................ 11

47 U.S.C. § 551 .............................................................................................................. 11

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................ 12

Fed. R. Civ. P. 20(a)(2) ............................................................................................ 12, 14

Fed. R. Civ. P. 37(b)(2)(A)(v) ........................................................................................ 7

## I.  INTRODUCTION

On April 10, 2013, the court issued an Order to Show Cause in the four above-captioned cases. The court ordered plaintiff Voltage Pictures, LLC ("Voltage") to (1) show cause why the cases should not be dismissed for failure to follow a court order, and (2) to show cause why defendants should not be severed and plaintiff required to pay the requisite filing fees to pursue a case against each individual defendant.

Plaintiff responds that the cases should not be dismissed for failure to follow the order of the court. Plaintiff further recognizes the court's concern with respect to potential litigation abuse. As such, plaintiff reviews the legal and factual basis for joinder and the absence of any bad faith or nefarious conduct in the instant cases. Plaintiff and appearing defendants both maintain joinder at this stage in the litigation is proper.

## II.  BACKGROUND

As has been previously noted to the court, the plague of peer-to-peer copyright infringement such as complained of by plaintiff is a serious issue.[1] The State of Oregon House of Representatives recently passed a unanimous resolution calling for increased efforts to fight piracy. House Memorial 2, 77th Oregon Legislative Assembly. Dec. Counsel, ¶ 9, Ex. 1. The United States Congress, in direct response to the growing use of peer-to-peer technology to commit piracy, increased the statutory penalties from $100,000 to $150,000. 17 U.S.C. § 504(c).

At the same time there is a permissive culture and a growing community which mocks copyright enforcement; as noted by Senator Levin, "many participants seem to consider it equivalent to jaywalking – illegal but no big deal." Testimony from *Privacy and Piracy*, *supra* fn. 1. BitTorrent sites which profit

---

[1] *Privacy and Piracy:* The Paradox of Illegal File Sharing on Peer-to-Peer Networks and the Impact of Technology on the Entertainment Industry: Hearing Before the Permanent Subcommittee on Investigations of the Sen. Comm. On Governmental Affairs, 108th Cong., 1st Sess. 10 (2003)

from this culture, such as The Pirate Bay openly flaunt copyright violations by posting letters from rights holders and The Pirate Bay's defiant responses which are replete with profanity.  Dec. Counsel ¶ 22, Ex. 16.  Online web pages and related communities have organized to distribute form motions to quash and to outline strategies which go beyond legitimate defenses and into the area of obstructing enforcement.  The current "cookie-cutter" defense is claiming one's password secured wi-fi has been "hacked."

It is true that there is a growing number of enforcement suits across the county, but that should be expected when estimates indicate BitTorrent now has more users than Hulu™ and Netflix™ combined.[2] This increase in litigation is not plaintiff driven, but is driven by infringers.  Due to some fundamental logistics and the often misplaced perception that internet activity is somehow immune from repercussions, the whole system of enforcement and opposition has become so reactionary that filings often appear on the docket without a logical relation to the matter before the court.  These filings are often based on supposition, anecdotes and other cases filed with other facts.  In this context, plaintiff Voltage seeks to enforce its rights and stem the continuing harm which is perpetrated against it by thousands of infringers in the most efficient and fair manner: by joining multiple defendants.

The several complaints include discussion on joinder by which Voltage notes (1) the commonality of the several defendants' activity; (2) that Voltage's rights to relief ultimately arise from the same series of transactions and occurrences; (3) that the complaint raises questions of law and fact common to all defendants; and (4) that permissive joinder permits a more efficient management of Voltage's claims which would reduce costs to Voltage and the defendants and which would  reduce costs and burdens on the court.  Through its complaint, Voltage indicates that on being specifically identified and on request from an identified defendant who claims prejudice in being joined, Voltage will dismiss that defendant and re-file against each such defendant individually.

Motions to expedite discovery were filed by Voltage on February 21, 2013 and granted by the February 22, 2013 order (Doc. 7, 3:13-cv-00295-AC)("Order") permitting Voltage to request via civil subpoena subscriber information from Internet Service Providers ("ISPs").  Pursuant to the Order,

---

[2] http://www.fastcompany.com/1714001/bittorrent-has-more-users-netflix-and-hulu-combined-and-doubled

Voltage began serving the civil subpoenas on the ISPs.  In depth discussion on the status of the subpoena process related to these several cases is covered in Voltage's Report to the Court & Request for Extension of Time ("Plaintiff's Report") and below.  Suffice it to say, there were complications with obtaining subscriber information.  Specifically, the amount of time required by the several ISPs to comply with notice requirements and respond to Voltage's subpoenas has been more than originally anticipated.  Dec. Counsel, ¶¶ 4-8.

On April 10, 2013, prior to the majority of the subpoena responses, the court issued an Order to Show Cause.  To provide a preliminary update to the court on the general status of this matter, Voltage filed Plaintiff's Report on April 17, 2013.  Voltage herein responds specifically to the Order to Show Cause ("OSC").

## III. DISCUSSION

### A.  <u>The cases should not be dismissed for failure to follow a court order.</u>

On February 22, 2013 the court granted Voltage's *ex parte* motion to expedite / accelerate discovery.  The court ordered, "[w]ithin 45 days from the date of this order, Plaintiff shall either amend its complaint to identify the Doe defendants or request an extension of time, if necessary, to discover the Doe defendants' identity."  Doc. 7, 3:13-cv-00295-AC.

Federal Rule of Civil Procedure 37 considers failure to comply with a court order related to discovery and provides that a court may dismiss the action in whole or in part.  Fed. R. Civ. P. 37(b)(2)(A)(v).  However, "dismissal is an extreme penalty."  *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir.1983).  "Due process prohibits dismissal for noncompliance when it is established that failure to comply was due to inability rather than willfulness, bad faith, or any fault of the party.  *Id.* (citing *National Hockey League v. Metropolitan Hockey*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779 (1976)).  In the present case, Voltage's noncompliance was due to inability.

The court's Order to Show Cause indicates its concern with Voltage's motivation – in essence the court's order suggests bad faith.  The court suspects Voltage may be seeking to use the court as a tool to

identify alleged infringers and as a means to seek quick settlements without litigating the case in court while keeping the litigation costs to a minimum.  OSC, pp. 2&5.  The court also suggests a potential misuse of the subpoena powers of the court "to facilitate demand letters and coerce settlement rather than ultimately serve process and litigate claims."  OSC, p. 5.

In light of events in other jurisdictions by other parties and media portrayals, the court is entitled to entertain these suspicions.  Local media has portrayed Voltage as a copyright troll.  The docile docket (prior to the OSC at least) suggests stagnant litigations.  Similar cases in other jurisdictions have uncovered abuse.  And Voltage failed to meet a deadline or to request an extension of time by three days.  While the suspicions are not surprising in the current context, the present situation is void of bad faith and plaintiff is legitimately and diligently pursuing this litigation.  The court's concerns have been partially addressed in the previously filed report and are further addressed below.

### 1.  Costs of the case.

The court is concerned with the costs of this matter and whether Voltage improperly seeks to keep litigation costs to a minimum.  Voltage openly acknowledges it is seeking to keep costs at a minimum, but it is not doing so improperly.  Voltage seeks to exercise its rights in the most efficient manner possible for plaintiff, the court and defendants.

Litigation costs appear "discounted" in an effort to promote judicial efficiency for all parties.  Prior to filing the above-captioned cases, Voltage's counsel contacted numerous representatives of this court and requested assistance and input (preferences) regarding the manner with which Voltage should pursue its claims.  Decl. Counsel, ¶ 3.  While counsel is well aware that the court administrators and staff do not give legal advice or set policy, a principal motivating factor for plaintiff's current paradigm was to proceed in a manner that was most cost efficient for *all* parties after seeking advice from available parties and not for any bad faith purpose.[3]

---

[3] The $350.00 filing fee for a case is clearly a bargain for the services rendered by the court whether for single or joined defendants.  It is noted the fiscal year ending Sept. 20, 2012, there were 278,442 civil filings in the District

RESPONSE TO ORDER TO SHOW CAUSE                              Page 8

**2.    Good faith litigation.**

The court is concerned that Voltage is merely seeking quick settlements with no intent of legitimately enforcing its rights.  The court suggests Voltage has potentially misused the subpoena power to coerce settlements rather than ultimately serve process and litigate the claims.  OSC, p. 5.  While Voltage seeks settlements to resolve disputes against defendants, it also seeks to enjoin future infringing conduct, to educate those that may be the victims of third party infringers, and to work with parties so that they appreciate the real impact of peer-to-peer piracy.

The absence of any documents evidencing legitimate enforcement on the dockets would understandably support the court's suggestion that Voltage is only seeking cheap and easy settlements.  However, to date, Voltage has entered at least six stipulated consent judgments which evidence that Voltage's interest lies in enjoining infringing activity as well recovering damages.[4]  Dec. Counsel, ¶ 23.  Not all of the stipulated consent judgments have resulted in money damages as the enforcement of a copyright may take several forms and at times the interest of justice warrants non-economic enforcement.  The purpose of Voltage's litigations is demonstrably to enforce its copyright in good faith.

Further, Voltage avoids "nuisance-value" settlements and actively seeks actual infringers of its copyright.  While it is true that any party receiving a notice that their ISP has received a subpoena might feel coerced or subjected to a personal attack, Voltage is not coercing persons into settling.  On the contrary, Voltage is making efforts to locate the actual infringers: "If [your client] is not in anyway involved then we have no interest in him paying 'nuisance' value for this case.  Our interest is in finding the infringing party."  Dec. Counsel ¶ 13, Ex.12.  Similarly, Voltage has worked to clear and isolate how subscribers have been potentially victimized by third parties through theft of internet services and has

---

Courts.  See www.uscourts.gov.  The Judicial Department funding for that year was $6.97 billion.  *Id.*  Filing fees would appear to equate to less that 1.5% of the judiciaries budget.  While the actual cost per case can be argued, it is not difficult to deduce that joinder often favors judicial economy as the court's per-case cost on just about *any* case must surely exceed the filing fee.

[4] These stipulated consent judgments have yet to be submitted due to current third party scrutiny and the likelihood that the parties who have entered the stipulated consent judgments would be harassed.  Decl. Counsel 21, Ex. 11.  All consent judgments are available for *in camera* review.  As well, Voltage has freely disclosed the pending Show Cause Order to parties and there are additional parties that have tentatively agreed to Consent Judgments but are holding off pending the resolution of the Court's Show Cause Order.  Decl. Counsel ¶ 21.

offered to "work with [the subscriber] to have a party investigate … to determine [who] is responsible for the illegal activity.  As well, if we are able to determine that there is an error in our data or of [sic] there is another explanation…"  Decl. Counsel, ¶ 10, Ex. 5.  In another instance, plaintiff is currently awaiting the receipt of paperwork which cleared a subscriber's machines as a result of a computer forensic analysis. Decl. Counsel, ¶ 21.

On other matters, plaintiff counsel has made clear to the identified subscribers, "Our client has an interest in identifying the actual infringers.  If she is not liable then we would like to clear her and work to ascertain the identity of the actual infringer."  Decl. Counsel, ¶ 11, Ex. 6.  "If your client is not the infringing party we would like to conduct further discovery to ascertain the identity of the infringing party..."  Decl. Counsel, ¶ 12, Ex. 7.  "Based on the facts you present we do not believe your client should be liable in this matter.  Your client maintained a password on their Wi-Fi and reasonably directed their neighbor/tenant to limit and control access..."  Decl. Counsel, ¶ 15, Ex. 8.  Far from concerns of coercion, plaintiff is cooperatively working to avoid inadvertently naming parties.

In an instance where a municipality was identified with an IP address tied to massive infringing activity, counsel noted "...it is clear this is a substantial issue not only for our clients, but also for The City.  Activity is recorded as recently as this morning..."  Further plaintiff agreed to work "cooperatively" to help this municipality track down and address this problem.  Decl. Counsel, ¶ 16, Ex. 9.  In an instance where a hotel was identified as a source of notable activity, plaintiff worked with the hotel which is now aware of the problem and plaintiff expressly waived any demands for compensation.  Decl. Counsel, ¶ 20. Plaintiff took a similar approach with respect to another business, and when proper, works cooperatively with parties to address the root causes of the problem.  Decl. Counsel, ¶¶ 17, 18, Ex. 10, 13.

Voltage's position even extends to its interaction with ISPs.  In plaintiff counsel's email to an ISP representative, plaintiff counsel wrote, "Is it possible to confirm that has not occurred since Nov. [], 2012?  I prefer to be careful and not falsely accuse anyone.  We really would like to make sure innocent people are not faced with litigation."  Dec. Counsel, ¶ 18, Ex. 13.

RESPONSE TO ORDER TO SHOW CAUSE                                                    Page 10

These and other presented examples demonstrate that Voltage is pursuing this litigation in good faith and diligently working to ensure only true infringers are named as Doe parties.

### 3.  Voltage has been proactive in case management.

Although Voltage's request for extension of time was beyond the 45 day time limit set by the court's Order, plaintiff has been proactive in case management.  With regard to the civil subpoena process, plaintiff's counsel took it on itself to provide for increased protections for the Doe defendants.  Specifically, when it appeared ISPs, by responding to subpoenas in good faith, might potentially violate subscriber rights provided by the Cable TV Privacy Act of 1984 (47 U.S.C. § 551)("Cable Act"), plaintiff's counsel began to include a notice of rights under the Cable Act and duties under the Stored Communications Act (18 U.S.C. § 2701).  Dec. Counsel, ¶ 4, Ex. 2.  As discussed more thoroughly in Plaintiff's Report to the Court, plaintiff's counsel went through several iterations of the discovery order to afford greater protections to subscribers which required significantly extending the response period to ensure statutory compliance.  Doc. 17, 3:13-cv-00295-AA.   It is acknowledged that Voltage's counsel failed to bring this extension to this judge's attention, though it was expressly presented and advocated in other similar pending matters.  See *Elf-Man, LLC v. Does 1-107*, No. 13-334 (D. Or., 2013); Dec. Counsel ¶¶ 4-8.

Apart from the notice of rights document Voltage included with civil subpoenas served on the ISPs, plaintiff's counsel has worked with the ISPs to coordinate with their workloads.  Several ISPs requested accommodation and extensions of time to comply with the subpoenas.  Voltage made accommodations and granted the reasonable requests for extension of time.  Decl. Counsel, ¶ 8.  Again, Voltage's counsel acknowledges that this was without leave of the court, but submits that Voltage's counsel was at all times acting in good faith.  Furthermore, the presence of several motions to quash filed subsequent to the court's Order to Show Cause on the dockets supports that many ISPs have yet to provide subscriber information in response to the civil subpoenas.

///

///

RESPONSE TO ORDER TO SHOW CAUSE                                    Page 11

    **4.  Voltage's failure to comply is based on inability and its cases should not be dismissed.**

Voltage's failure to comply is not a result of willfulness or bad faith, but a failure based on inability.  Voltage's failure to comply resulted in part from its counsel's perception that the continued and pending communication with the court regarding the development of workable discovery orders softened the 45 day time limit and from Voltage's inability to timely name defendants due to the several time extensions and accommodations made to the ISPs which needed more time to comply with notice laws. Dismissal is inappropriate.  *National Hockey League*, 427 U.S. at 640.

    **B.  <u>The defendants should not be severed.</u>**

Joinder of defendants is permissible if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Federal Rule of Civil Procedure 1 provides that each rule should be "construed and administered to secure the just, speedy and inexpensive determination of every action or proceeding."  Fed. R. Civ. P. 1.  The Supreme Court has stated that "joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); see also *Hagan v. Rogers*, 570 F.3d 146, 152 (3d Cir. 2009). Accordingly, the court should liberally interpret the joinder rules and apply them in the interests of fairness and justice to all parties.  Plaintiff's position is joinder is currently proper and the court should not forcibly sever the several defendants.

The court makes several observations related to the propriety of joiner in the instant cases.  The court's primary focus is on "commonality" and specifically the "varying methods, time and places" at issue.  The court is correct that this is a matter for interpretation and courts across the country have ruled many ways.  Some courts permit joinder of thousands, at least in the initial stages to permit discovery. *Voltage Pictures, LLC v. Does 1-2,514*, No. 12-217 (M.D. Fl., 2012), *Maverick Entertainment Group,*

*Inc. v. Does 1-4,350*, No. 10-569 (D.D.C., 2010). Some courts refuse to allow joinder, forcing plaintiffs to pursue infringers on an individual basis. *In Re BitTorrent Adult Film Copyright Infringement Cases,* No. 12-3995 (E.D.N.Y., 2012), *Boy Racer, Inc. v. Does 1–60*, No. 11-1738 (N.D. Cal., 2011). And some courts have limited joinder to a "swarm" basis that has varying degrees of commonality in what has become sort of a middle ground. *Digital Sin, Inc. v. Does 1–176*, 2012 WL 263491 (S.D.N.Y., 2012), *Raw Films v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa., 2012). There have even been contemporaneous inconsistencies in the same district. See *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161 (E.D. Mich., 2012)(Joinder found proper) and *Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 (E.D. Mich., 2012)(Joinder denied). No single issue is determinative. The determination lies with the discretion of the court and whether or not there is a common nexus of law and fact that the court deems is best managed through joinder. *United States v. Mississippi*, 380 U.S. 128, 142-142 (1965). And while joinder is strongly encouraged, the balance properly lies in the principals of fundamental fairness to all parties as examined on a case by case basis.

Presently, the elements permitting permissive joinder have been met placing this matter squarely within the discretion of the court. The above-captioned cases allege copyright infringement of a single work through BitTorrent file sharing (method) during the course of a three month period beginning November 11, 2012 and ending February 7, 2013 (time) and occurring on the internet by users located in Oregon (place). All of the defendants endeavored to perpetuate the BitTorrent system of copyright infringement. At least as to known issues and facts as they now stand, all of the defendants are in essentially the same position and properly joined. Plaintiff maintains, at least presently, joinder is proper and promotes the legitimate administration of justice and fairness to all parties.

### 1.   There is a single BitTorrent Protocol used by defendants.

While the court is correct in that there are multiple clients used by the several defendants, there is but one essential method – one file sharing protocol. Regardless of the particular client, all defendant users must (1) download a torrent client; (2) locate *Maximum Conviction* on a website which indexes

available files; (3) select a version of the *Maximum Conviction* torrent file which is rated as a healthy swarm; (4) download the torrent file into the client; and (5) download the *Maximum Conviction* torrent file without permission.[5]  BitTorrent file sharing is comprised of these common series of transactions. Fed. R. Civ. P. 20(a)(2).  The complaints in the above-captioned cases commonly allege copyright infringement through this common single file sharing method.

Similarly the underlying nature of BitTorrent piracy should not be overlooked.  BitTorrent piracy is often a for-profit business.[6]  Torrent sites with millions of active users compete for participants to generate ad-driven revenue.  Participants in turn add to the pool of available downloads and the speed at which others are able to commit piracy.  Each of the defendants did more than simply pirate a movie for their own use.[7]  Each of the defendants furthered a business venture whose model profits from piracy and generates millions of advertising dollars from copyright infringement.

### 2.  The infringing activity occurred within a common time and place.

The court notes that the exhibits to the complaints "demonstrate that the Doe defendants participated in the process sometimes months apart from each other and from up to hundreds of miles away utilizing many different ISPs and different BitTorrent clients."  OSC, p. 5.  The court's observation is correct: the infringement is alleged to have occurred over the course of a three month period running from November 11, 2012 through February 7, 2013.  However, Rule 20(a) references a "**series** of transactions or occurrences." (emphasis added).  Contemporaneous identity of all events is unnecessary. *Mosley v. Gen. Motors Corp*., 497 F.2d 1330, 1333 (8th Cir. 1974).

Courts in other districts have determined that joinder is proper in BitTorrent copyright infringement cases where the activity occurred over a three month time span.  See *Tricoast Smitty, LLC v. Does 1-50*, No. 12-6385 (N.D. Ill., 2012); *Pacific Century International v. Does 1-31*, No. 11-9064 (N.D.

---

[5] BitTorrent from Wikipedia - http://en.wikipedia.org/wiki/BitTorrent (last checked 4.16.13).
[6] UTorrent's Monetization Of File Sharing Proves Online Piracy Is Big Business, Even After Demonoid; http://www.ibtimes.com/utorrents-monetization-file-sharing-proves-online-piracy-big-business-even-after-demonoid-760641; Ex. 15.
[7] Economics of BitTorrent Communities, Ian Kash, et al., Presented WWW 2012, April 2012.  Ex. 17.

RESPONSE TO ORDER TO SHOW CAUSE                              Page 14

Ill., 2011). This is in part due to the nature of BitTorrent protocol which provides for continuous seeding and distribution of a file after the file has been downloaded. *Tricoast Smitty, LLC* at 6. "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161 (E.D. Mich., 2012).

Advancing technology requires this court reevaluate its concept of joinder. The Southern District of New York aptly noted "[w]hile the period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time." *Malibu Media, LLC v. John Does 1-5*, 2012 WL 3641291 (S.D.N.Y., 2012). Technologies have changed; so must the traditional concept of time and place in the joinder calculus. The activity presently alleged arises from the same series of occurrences. Accordingly, the court should not treat the temporal range as a barrier to permissive joinder or contrary to the interests of justice and fairness.

In addition, the court should not sever based on the literal distance between defendants. Geolocation technology enables Voltage's investigators to determine that each defendant conducted acts of copying its work within Oregon.[8] This court has jurisdiction over the defendants. Moreover, the internet connects society like never before. To limit "place" to physical locations in the setting of a litigation which alleges activity which occurred over the internet fails to consider that the rules of civil procedure must be applied within a technologically evolving world. This court should not be limited to traditional concepts of "place" in the internet age.

### 3. There are common issues of law and fact.

The court observes "there could be a variety of facts uncommon to the alleged infringers[]" and that "there could be different legal theories of defense and perhaps even conflicting defenses. OSC, p. 4. Joinder is permissible where there will be common questions of law or fact common to all defendants.

---

[8] In instances where IP addresses have been found to be situated in Washington, Voltage has voluntarily dismissed those Does.

Presently, there are common issues of law: Voltage will need to establish the validity of its copyright and establish infringement.  There are also common issues of fact: the mechanisms of BitTorrent protocol and the methods of Voltage's infringement investigation.  Should varying interests or defenses dictate severance, or should any defendant claim prejudice, then this issue may become ripe at a later time and revisited.  But as matters are now known, joinder is clearly permissible.

### 4.   Interests of justice and principals of fundamental fairness.

#### a)  *Plaintiff's interest in joinder.*

Plaintiff Voltage acknowledges it benefits from joinder.  A single consolidated case affords plaintiff greater efficiency in case management and an obvious savings of filing fees.  In a consolidated case, Plaintiff is able to holistically manage the legitimate enforcement of rights and approach a larger percentage of those involved with infringing its work as opposed to a series of singular pursuits wherein each case would have its own narrower economic model.  By maintaining the several defendants joined as long as possible, plaintiff has a greater leeway in individual case management and disposition.  In the short time of this case with the limited disclosure, plaintiff has demonstrated this effective and holistic management practice though effective education and policing of rights which include non-economic enforcement strategies.

#### b)  *Court's interests in joinder.*

Without a doubt, the enforcement of plaintiff's rights is a burden on the courts.  600 or more acts of infringement in this district, when policed as opposed to being ignored, cannot help but strain resources.  However, even though justice may be difficult to administer, the difficulty should not be a barrier to relief.  *Marbury v. Madison*, 1 Cranch 137 (1803).  Joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation.  *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 252-53 (N.D. Ill. 2011) ("[J]oinder at this stage is . . . in the interest of convenience and judicial economy [and] does not create any unnecessary delay nor does it prejudice any party.  Rather, severance is more likely to likely to cause delays and prejudice [plaintiff] and future named defendants alike."); *Raw*

*Films v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa., 2012)("consolidating early discovery for the purpose of determining the scope of claims and defenses will foster judicial economy.").

While the burden of the present case is very real, the burden is far less than if the cases were presented individually. The defendants presented individually would likely file the same motions to quash, have the same defenses, and there would be excessive redundancy. And as discussed above, the savings of the plaintiff in joinder are likely also afforded the court. The interests of justice favor joinder.

c) *Defendants' interest in joinder.*

Where the economy of joinder is truly appreciable, lies in the underlying and rarely discussed benefit that is realized by defendants. The Copyright Act subjects infringers to notable penalties. Civil penalties have increased to $150,000 per work in direct response to the proliferation of internet piracy. 17 U.S.C. § 504(c). The implication that a plaintiff gains unfair advantage by reducing the costs at the filing stage of these cases by only a fraction of the potential damages available for each individual case should be balanced against the real exposure of the defendants. Joinder permits a plaintiff to manage cases at a reduced cost and accept settlements in lesser amounts, particularly as costs and fees for willful infringement are properly assessed against defendants. 17 U.S.C. § 505. If plaintiff were forced to proceed against defendants individually, costs and fees (transactions costs) would be higher dictating higher settlements.

Similarly, the perspective of joinder granting unfair advantage to a plaintiff is misplaced. As the docket in this case since the filing of the Order to Show Cause demonstrates, if anything, it is a sole plaintiff against the multitudes of defendants and their counsels. *Call of the Wild Movie, LLC v. Does 1-1,062,* 770 F. Supp. 2d 332, 344 (D.D.C. 2011) ("Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.") Should any single defendant prevail in negating plaintiff's claims, as joined defendants, all the defendants benefit. Joinder clearly favors the consolidation of defendants' efforts as has been demonstrated in the recent filings of this case.

Furthermore, of the answers filed, no defendant has asked for severance.  In fact, *defense counsels have specifically opposed severance*.  In an answer filed April 15, 2013 the Havlicek's state, "… there *are* questions of law and fact that should be resolved prior to severing individual defendants. … Judicial economy counsels for the determination of such predicate questions before dismissal or severance.  Doc. 20, 3:13-cv-00295-AA, p.5, ¶ 32 (emphasis in original).  The Havlicek answers also states "… joinder is presently appropriate to permit more efficient management of plaintiff's claims and to reduce the burden on the Court." *Id*. at p.6, ¶ 36.  Near identical language is found in an answer of Orlando and Foster filed April 16, 2013. Doc. 33, 3:13-cv-00295-AA, ¶¶ 32 & 36.  Plaintiff continues to freely offer to sever any defendant on request, but none have asked and those that have expressed a preference oppose severance.

### d)  Risk of Abuse

Without a doubt, plaintiff appears before the court among a well publicized pattern of abuse by other parties in other jurisdictions, often promoted by those that oppose any enforcement.  Numerous cases as well as articles such as "The Case Against… John Doe Copyright Infringement Lawsuits," 111 Mich. L. Rev. 283, have identified four main avenues for potential litigation abuse in joinder: (a) that the defendants are unlikely to be under the jurisdiction of the court; (b) that the pornographic nature of the copyrighted work will unduly coerce settlement; (c) that the large number of defendants renders the proceedings unworkable; and (d) that plaintiffs 'shake down' defendants to 'extract nuisance-level settlements' without any intention to go to trial. These issues are not present in plaintiff's cases.

### (1)  Jurisdiction is Proper

In the present case, efforts have been made to ensure all defendants have conducted activity in this district.  While the citizens of Oregon may continue to be subject to federal long-arm jurisdiction for similar cases in other jurisdictions, plaintiff Voltage does not seek to reciprocate and follow the pattern of using this court to impose demands on defendants outside of this district.  Instead, Voltage comes to this court to enforce its rights legitimately in the jurisdiction in which it suffered injury.

RESPONSE TO ORDER TO SHOW CAUSE                                    Page 18

(2)  Plaintiff's film is mainstream media

In some cases there has been concern that defendants would pay a settlement simply to avoid being associated with pornographic films which often employ salacious titles.  *Bubble Gum Productions, LLC v. Does 1-80*, 2012 WL 2953309 (S.D.Fla., 2012), *Patrick Collins, Inc. v. Does 1-30*, 2013 WL 1157840 (E.D. Pa., 2013).  Plaintiff's film, "Maximum Conviction," is a mainstream action movie and not salacious or even controversial.  There is no issue of coercion of settlement due to the nature of the film in this case.

(3)  Unworkable proceedings

Too many defendants causes a case to be unmanageable.  See *Nu Image, Inc. v. Does 1–23,322*, 799 F. Supp. 2d 34 (D.D.C., 2011).  And it may be 371 defendants in the above-captioned 3:13-cv-295-AA case is too many.  However, that is not yet the case here.  Granted, in this initial matter in Oregon there is a learning curve for both plaintiff and defendants' counsel as they appear with new theories.  But it is likely 500 defendants in a single case, at least for initial subscriber identification, is highly manageable and efficient.  Plaintiff Voltage is specifically prepared to sever any individual defendant where justice so requires, and though it may be proper to sever specific defendants or classes of defendants in the future, such is premature at this time.[9]

(4)  Proper settlements

As previously discussed, plaintiff is expressly avoiding "nuisance" settlements.  Ex. 12.  See also Sec. III. A. 2., *supra*.  Plaintiff is facing a two edged sword in this issue.  Should plaintiff demand too little, then the allegation that only nuisance values are at issue becomes ripe.  Should plaintiff demand too much, then there is the question of excessive demands.  But plaintiff proposes there is a greater issue with respect to the perception of *any* settlement offer that is independent of the amount.

The present case is complicated in that plaintiff is unable to first contact a defendant without seeking the aid of the court.  In virtually any other litigation, a plaintiff is generally able to identify a

---

[9] Two appearing defendants in the 13-cv-00295 matter have conferred with plaintiff on their request to formally consolidate all four of the above captioned cases. Decl. Counsel ¶ 25.

defendant and negotiate and attempt to settle *prior* to filing.  It is axiomatic that the majority of conflicts between claimants and defendants never result in cases being filed.  But because of the requirement that plaintiff must first request leave of the court to subpoena ISPs and is only then able to identify subscribers who may be defendants, plaintiff's first contact with parties is generally their notice of a subpoena after a literal "*federal case*" is pending.

For many there is no gradual easing into an escalating conflict or exchange of demands that precede the filing of a formal complaint.  Logistics mandate that parties enter into their first contact with a formal case pending.[10]  While many people may find a settlement demand only after a case is pending difficult to digest and strenuously object, there is simply no other option.  This perceived affront is not new to Oregon courts and was the subject of the long fought *Andersen v. Atlantic Recording Corp.* case wherein plaintiff sought to avenge demands against her by filing claims for fraud and negligent misrepresentation, violations of RICO, abuse of legal process, malicious prosecution, invasion of privacy, deceptive business practices, misuse of copyright laws, and civil conspiracy.  All based on claims she downloaded music files and the resulting settlement demands, very similar to the situation now facing parties in this case.  *Andersen v. Atlantic Recording Corp.*, No. 7-934 (D. Or., 2010).  In *Andersen*, the outcome was a recognition that despite any affront a party may feel or perceptions to the contrary, it is the rights holder who has first been injured and it is the rights holder who *must* come to the court to seek redress for there to be any legitimacy in the judicial process.  See also *Sosa v. DirectTV*, 437 F. 3d 923, 937 (9th Cir. 2006) (Petitions Clause protections necessarily extended to 100,000+ settlement demand letters.)

Regardless, plaintiff has a demonstrated pursuit of legitimate settlements which include non-economic relief.  Sec. III. A. 2., *supra*.  And while plaintiff is fully prepared to take a proper contested case to trial, the vast majority of identified infringing parties are expected to settle, as is proper.  *Marek v. Chesny,* 473 U.S. 1, 11 (1985).

---

[10] It should be recognized a pattern of filing suit solely to obtain subscriber information and then dismissing the suit has been recognized as more prone to abuse than the present model.

*e)   Further Considerations.*

Both the federal and state governments have expressly recognized that piracy is a rampant and serious problem.  No matter how this matter proceeds, the burden on the courts to adjudicate thousands injuries and acts of piracy will be notable.  This is a complex issue and one not easily resolved.  Unfettered subpoena power and a court without a watchful eye can lead to abuses by unscrupulous plaintiffs, but the solution is not to tolerate rampant theft or impair the legitimate enforcement of rights.  Copyright litigation may eventually require specific procedures, possibly supplemental local rules such as those that guide certain employment cases and patent litigation.  But it is clear that an answer needs to be found.  Contrary to the blind and unsupported import of select anecdotes and media sensation, Voltage comes to this court with a demonstrated practice of real and rational review and management of this litigation.  Voltage continually endeavors to improve the balance of rights management that will promote justice and fairness to both rights holders and others.

Plaintiff submits that in sixty (60) days it would be proper for a conference with the court and possibly an invitation to interested third parties who have expressed concern related to this litigation.  At that time, the court could review this and related litigation to further develop a model of best practices to promote the effective and efficient administration of justice and to oversee the much needed enforcement of intellectual property rights.


**IV. CONCLUSION**

Voltage's failure to comply with the court's Order was not in bad faith or willful; rather, Voltage's noncompliance was due to inability.  As such Voltage's case should not be dismissed.  "Joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am.*, 383 U.S. at 724.  Common issues of law and fact exist such that joinder is permitted.

Voltage acknowledges that this matter is purely subject to the court's discretion.  However, Voltage submits (and is joined in part by appearing defendants) that the difficulties of the present case are

not likely to be obviated by severance.  When faced with hundreds of injuries in this state and hundreds of

potential defendants, Voltage, as an individual copyright holder, should be able to properly and efficiently

enforce its rights and seeks to do so in the most efficient and fair manner possible.  Voltage's willingness

to sever any party who claims prejudice, and Voltage's demonstrated good faith efforts to legitimately

enforce its rights, support that the interests of justice and the principals of fairness are most efficiently

served by joinder at least until such time as infringing parties are identified.


DATED: April 20, 2013.

                                   Respectfully submitted,

                                   CROWELL LAW

                                   /s/ Carl D. Crowell
                                   Carl D. Crowell, OSB No. 982049
                                   (503) 581-1240
                                   Of attorneys for the plaintiff