Carl D. Crowell, OSB No. 982049
email: crowell@kite.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **VOLTAGE PICTURES, LLC,** | Case No.: 6:13-cv-00295-AA |
| Plaintiff, | |
| v. | (PROPOSED)<br>SECOND AMENDED COMPLAINT<br>COPYRIGHT INFRINGEMENT;<br>EXHIBIT 1 |
| **DOES 1 – 371,** | |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff Voltage Pictures, LLC a limited liability company, complains and alleges through its Second Amended Complaint as follows:

### JURISDICTION AND VENUE

1.      This is a suit for copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. ("The Copyright Act").

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

4.      More particularly, venue is proper in this district as plaintiff has used geolocation technology to determine that, upon information and belief, each defendant conducted acts of copying plaintiff's work in this district.

## PARTIES

### THE PLAINTIFF

5.      Plaintiff Voltage Pictures, LLC ("Voltage" / "Plaintiff") is a limited liability company with principal offices in Los Angeles, California that produces, markets and distributes motion pictures including the subject work in this matter, a motion picture titled *Maximum Conviction*.

### The Rights of the Plaintiff

6.      The motion picture in this case, titled *Maximum Conviction*, has been registered with the United States Copyright Office by the author, Maxcon Productions Inc. Registration No. PAu 3-647-070, 2012.

7.      The motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

8.      The motion picture is currently offered for sale in commerce.

9.      Voltage Pictures, LLC has been assigned rights to act as agent for the author and has been assigned all rights to bring, prosecute, defend and appear in all suits, actions and proceedings concerning any piracy, infringement or misappropriation of the motion picture and to make any claims as the owner.

10.     Under the Copyright Act, Voltage Pictures, LLC is the proprietor of all right, title, and interest in the motion picture, including the right to sue for past infringement.

11.     Under the Copyright Act, Voltage Pictures, LLC possesses the exclusive rights to reproduce the motion picture and to distribute the motion picture to the public.

12.    Plaintiff's motion picture is easily discernible as a professional work as it was created using professional performers, directors, cinematographers, lighting technicians, set designers and editors and with professional-grade cameras, lighting and editing equipment.

13.    Defendants had notice of plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

## THE DEFENDANTS

### In General

14.    Defendants are participants in a peer-to-peer file sharing network.

15.    The defendants have been identified as Does in the instant case and are each indicated in the attached Exhibit 1 by a specific internet protocol ("IP") address used at a specific time to infringe plaintiff's work.

16.    The defendants have improperly and without authorization from plaintiff copied, downloaded, shared and uploaded plaintiff's motion picture using a peer-to-peer network.

17.    The defendants have infringed plaintiff's copyrights in this district.

18.    The defendants and their conduct are more specifically described below.

## BACKGROUND

19.    In the production of a motion picture there are countless expenses and labors, many of which are not evident in the final project, including writers, staff persons, construction workers and others.

20.    Indeed, the final product produced, which may be less than two hours long is often sourced from countless hours of preparation, filming, post-production and promotion to bring the final product to viewers.

21.     The end product that many consumers see is a few hours in a theater or a DVD product that once production is complete has a nominal cost on a per-viewing experience.  However, this is misleading to the true costs of the motion picture as the costs to view a  completed motion picture or produce a single DVD are nominal compared to what is often years of work by many of people leading up to the end product.

22.     Added to this is what most people see related to the end product, movie stars, directors and other persons of note, are generally perceived as highly compensated.  This leads to the common misunderstanding that people involved in motion pictures are already wealthy.

23.     When the perception is that those affiliated with a motion picture are already wealthy and the end product, such as a DVD, costs little to make, a reality disconnect often builds in the minds of much of the public, namely that those associated with a motion picture do not need any more money.

24.     When this reality disconnect meets with the ready availability of pirated copies of motion pictures and the ease with which they can be pirated and downloaded at an almost anonymous level, many people feel justified in their pirating or theft of motion pictures.

25.     The result is that despite the industry's efforts to capitalize on internet technology and reduce costs to end viewers through legitimate and legal means of online viewing options such as through Netflix™, Hulu™, and Amazon Prime™, there are still those that use this technology to steal motion pictures and undermine the efforts of creators through piracy and unauthorized distribution of motion pictures.

## PEER-TO-PEER INTERNET PIRACY

26.     As noted by Senator Levin in Congressional hearings on peer-to-peer internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense,

punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal.  But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

27.    Peer-to-peer networks, at least in their most common form, are computer systems that enable internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the internet.

28.    The particular peer-to-peer protocol at issue in this suit is the BitTorrent protocol.

29.    To use BitTorrent, a user intentionally downloads a program that they install on their computer called a "client."  The BitTorrent client is the user's interface during the downloading/uploading process.  The client may be free, supported by advertising, offer upgrades or add on services for a fee, or a combination of several options.

30.    Users then intentionally visit a "torrent site" or network site to find media or content available for download, often using a standard web browser.

31.    A torrent site is often an advertising revenue or subscription supported index of media or content being made available by other users on the network and maintains a listing of movies and television programs among other copyrighted content.

32.    A user then uses the torrent site to connect with other users and exchange content though the BitTorrent protocol often with many users at the same time.

33.     Internet piracy, and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

34.     On information and belief, many defendants have paid money to facilitate or permit increased access to content which has been made available without authorization.

35.     To increase the value of the advertising and sometimes subscription access sold by torrent sites, many torrent sites work to expand the pool of available titles and speed of downloads through increasing the number of member peers and thus the desirability of their clients and networks.  To accomplish this they reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

36.     A significant element of the BitTorrent model is that those who participate and download movies not only share and upload movies with others, but participants are often rewarded through various means based on the volume and availability of content participants in turn provide the network.   In sum, there is a feedback incentive for participants as they obtain not only the benefit of their pirated copy of a movie, but they obtain other benefits by increasing the availability of pirated content to others.

37.     As such there are a growing number of users that participate in peer-to-peer networks and receive personal gain or compensation in that the networks they use reward those who provide large numbers of files for upload to others.  On information and belief, many defendants have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including plaintiff's movie.

38.     Another growing element of the BitTorrent model is that users are able to attach advertising to the files they upload through various means allowing them to generate revenue

through the propagation of the titles they make available to others.  While it may or may not be that any of the defendants in this case are personally and directly generating revenue from such conduct, there is a high likelihood that the defendants are furthering such efforts as they download and then re-publish pirated content that has been pirated and used to provide advertising to third parties.

39.     The use of BitTorrent does more than cause harm through the theft of intellectual property. The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and a system of rewards and compensation to the participants, each of whom contribute to and further the enterprise.

## JOINDER

40.     Plaintiff acknowledges that joinder in this action under FRCP 20(a)(2) is permissive in that plaintiff's claims arise out of the same occurrences or transactions, or series of occurrences or transactions and that there are questions of law and fact common to each of the defendants.

41.     All defendants have collectively acted through the BitTorrent protocol to download and distribute plaintiff's motion picture, each damaging plaintiff.

42.     All defendants have acted through the BitTorrent protocol to contribute to the sharing of plaintiff's motion picture and the functionality of the BitTorrent network.

43.     As such, plaintiff's rights to relief, as stated below, ultimately arise out of the same series of transactions and occurrences.

44.     This action also raises substantial questions of law and fact common to all defendants.

45.     Permissive joinder in the instant case permits a more efficient management of the claims of plaintiff against the several defendants and reduces the costs to plaintiff and defendants and the costs and burdens on the Court.

46.     Notice is provided that on being specifically identified and on request from an identified

defendant, with leave of the Court, plaintiff agrees to sever any defendant that claims prejudice

in being joined in this matter and to proceed against each such defendant individually.

## FACTS COMMON TO ALL CLAIMS

### IP Addresses

47.     An Internet Service Provider, ("ISP"), grants access to the internet and the ability to send

and receive information, whether in the form of an email, photo or motion picture. To connect to

the internet a user must contract with an ISP and create an account for service either directly, or

through an intermediary such as a subscriber.

48.     The ISP then generally assigns each subscriber a unique IP address.  An IP address is like

the address used on an envelope.  It is the identifier each defendant used to tell the world not

only where they were sending data from, but the location to where any requested data should be

sent.

49.     The defendants have been identified as Does in the instant case and are indicated in the

attached Exhibit 1 by a specific IP address, used at a specific time to exchange plaintiff's motion

picture though the BitTorrent peer-to-peer network.

50.     Under the BitTorrent protocol each file has a unique "hash" (a file identifier generated by

an algorithm developed and implemented by the National Security Agency) tied to a specific file.

In the instant case, all hashes identified on Exhibit 1 have been confirmed as being for an

unauthorized copy of plaintiff's motion picture.

51.     Plaintiff has, to a reasonable degree of scientific certainty, learned the ISP used by each

defendant, the torrent file copied and distributed by each defendant, the BitTorrent client

application utilized by each defendant, and the location of each defendant, at least down to the

state level, if not the county level at the time of infringement as determined by geolocation technology.  All of this information is provided in Exhibit 1.

52.     Despite the best available investigative techniques, it is impossible for plaintiff to identify defendants by name at this time.  Thus plaintiff must sue defendants as Does 1 - 371.

53.     Plaintiff believes the respective ISPs have information identifying the subscribers who are either defendants or who are parties with information needed to identify the defendants as defendants acted through the accounts of subscribers who were assigned the IP addresses of Exhibit 1.  Plaintiff intends to request expedited discovery for the purpose of issuing subpoenas to the ISPs to identify subscribers and any subsequent intermediary in order to learn the identity of the Does.

## Conduct of Defendants

54.     Plaintiff has recorded each defendant identified herein as copying and publishing plaintiff's motion picture via BitTorrent, as plaintiff's investigator has downloaded the motion picture from each defendant identified herein.

55.     On information and belief, defendants' conduct was unauthorized and in violation of the license and terms of access to the internet through their ISP.

56.     Upon information and belief, each defendant was a willing and knowing participant in the infringing of plaintiff's copyright.

57.     Each defendant's conduct is effectively part of a collective enterprise constituting substantially similar or identical facts.

58.     Upon information and belief, many defendants also obtained compensation or personal benefit through making plaintiff's motion picture available to others.

///

**Exemplar Defendant**

59.    For example, user Doe No. 10 of 371, known at this time only by the IP address of 67.5.200.48, and believed to reside in Portland, as either a subscriber or acting through an account established by a subscriber, initiated his or her infringing conduct by first intentionally logging into the one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows and software. Doe No. 10 then intentionally obtained a torrent file identified by a "hash" or SHA1:CDBF914AEB80E3C01B0A8F030363F1488880F1CB in this specific instance which is for plaintiff's motion picture from the index and intentionally loaded that torrent file into a computer program or client designed to read such files.

60.    With the torrent file intentionally loaded by Doe No. 10, his or her BitTorrent client used the BitTorrent protocol to initiate connections with hundreds of other users possessing and uploading or sharing copies of the digital media described in that same hash, namely, plaintiff's motion picture.  As the motion picture was copied to Doe No. 10's computer piece by piece, these downloaded pieces of plaintiff's motion picture were then immediately published and made available for upload to others from Doe No. 10's computer.

61.    Each of Does 1 - 371 performed the same acts as those described for Doe No. 10, above. Each of these defendants also became an uploader, meaning that each downloaded file or file segment was then available to other users seeking to obtain the file without degradation in sound or picture quality.  Thus, each participant in the BitTorrent was an uploader or publisher and also a downloader or copier of plaintiff's motion picture.

///

///

## CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT

62.     Exhibit 1 identifies the Doe defendants known to plaintiff who have, without the permission or consent of plaintiff, copied and distributed plaintiff's motion picture through a public BitTorrent network.

63.     Defendants' actions infringed plaintiff's exclusive rights under The Copyright Act.

64.     Defendants' conduct has been willful, intentional, in disregard of and indifferent to plaintiff's rights.

65.     As a direct and proximate result of defendants' conduct, plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

66.     Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

67.     The conduct of each defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury.

68.     Pursuant to 17 U.S.C. §§ 502 and 503, plaintiff is entitled to injunctive relief prohibiting each defendant from further contributing to the infringement of plaintiff's copyrights and ordering that each defendant destroy all copies of plaintiff's motion picture made in violation of plaintiff's rights.

## DAMAGES

69.     Plaintiff has been damaged and claims damages of $30,000.00 from each defendant pursuant to 17 U.S.C. § 504(c)(1).

///

///

## Notice of Further Claims

70.     With the specific intention of deterring internet piracy such as has been committed by defendants in this case, Congress significantly increased the maximum award for willful infringement from $100,000 to $150,000.

71.     While the relief prayed for by plaintiff is less than may be allowed by law, plaintiff provides notice of the potential damages available under various laws, such as 17 U.S.C. § 504 which include:

  a.  Defendants' profits;

  b.  Plaintiff's full damages;

  c.  Statutory damages of up to $150,000 against each defendant pursuant to the intent of Congress;

  d.  All costs of this action; and

  e.  Broad equitable relief, including the seizure or destruction of all infringing articles and equipment used in the infringement, including any computers used.

72.     Plaintiff provides that the trademark VOLTAGE PICTURES has been registered with the State of Oregon, pursuant to ORS 647.015 and plaintiff has rights available to it under ORS 647.105 et seq.

73.     Plaintiff gives notice it may move to elect the full scope of relief available against each defendant as discovery proceeds.


## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants and each of them as follows:

A.       For entry of permanent injunctions enjoining each defendant from infringing plaintiff's rights in plaintiff's motion picture, including without limitation by using the internet to reproduce or copy plaintiff's motion picture, to distribute plaintiff's motion picture, or to make plaintiff's motion picture available for distribution to the public, except pursuant to a lawful license or with the express authority of plaintiff.  And further directing defendants to destroy all unauthorized copies of plaintiff's motion picture.

B.       For $30,000.00 damages pursuant to 17 U.S.C. § 504.

C.       For plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505.

D.       For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

DATED: April ___, 2013

Respectfully submitted,

CROWELL LAW

_____
Carl D. Crowell, OSB No. 982049
email:  crowell@kite.com
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for the plaintiff